1

**BEGAM MARKS & TRAULSEN, P.A.**
11201 North Tatum Blvd., Suite 110
Phoenix, Arizona 85028-6037
(602) 254-6071

Richard P. Traulsen – State Bar #016050
rtraulsen@BMT-law.com
*Local Counsel for Plaintiff*

2

3

4

5

6

7 **IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

8

9 | Douglas Haegg, individually and on behalf of all similarly situated individuals, | Case No.: |

10

11 | Plaintiff, |

v.

12 | | **COLLECTIVE AND CLASS ACTION** |
| Magellan Health, Inc., | **COMPLAINT AND JURY TRIAL** |
| | **DEMAND** |

13

14 | Defendant. |

15

16      COMES NOW Plaintiff, DOUGLAS HAEGG ("PLAINTIFF") by and through his

17 undersigned attorneys, and hereby brings this Collective and Class Action Complaint

18 against Defendant, MAGELLAN HEALTH, INC., ("Defendant") and states as follows:

19                              **INTRODUCTION**

20      1.     This is a class and collective action brought by Plaintiff on behalf of himself

21 and all similarly situated current and/or former Customer Service Representative

22 employees of Defendant to recover for Defendant's willful violations of the Fair Labor

23 Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., the Arizona Wage Act, A.R.S. §§ 23-

24 350, et seq., and A.R.S. §§ 23-364 (the "Arizona Wage Act"), and alleged contractual

25 obligations (or unjust enrichment if no contract is found), and other appropriate rules,

26 regulations, statutes, and ordinances.

27      2.     The U.S. Department of Labor ("DOL") recognizes that call center jobs, like

28 those held by Plaintiff in Defendant's call center locations, are homogenous and issued

guidance to alert and condemn an employer's non-payment of an employee's necessary preliminary and postliminary activities. *See* DOL Fact Sheet #64, attached hereto as Exhibit A at 2 ("An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails.") Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

3.     Defendant subjected Plaintiff, and those similarly situated, to Defendant's policy and practice of failing to compensate its call center employees for their necessary boot-up and boot-down time, which resulted in the failure to properly compensate them as required under applicable federal and state laws.

4.     Plaintiff seeks a declaration that his rights, the rights of the FLSA Collective Class, and the rights of the Rule 23 Classes were violated and seek to recover an award of unpaid wages and overtime premiums, liquidated damages, penalties, injunctive and declaratory relief, attorneys' fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

**JURISDICTION AND VENUE**

5.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA, 29 U.S.C. §§ 201, *et seq.*

6.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

7.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common set of operative facts and are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

1      8.     Upon information and belief, Defendant's annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

9.     Defendant's employees, including Plaintiff, engage in interstate commerce—including, but not limited to utilizing telephone lines and Internet—and therefore, they are also covered by the FLSA on an individual basis.

10.     This Court has personal jurisdiction over Defendant because it maintains offices in the State of Arizona.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business within this District, and because a substantial portion of the events that give rise to the claims pled in this Complaint occurred in this District.

## PARTIES

12.     Plaintiff is an individual who resides in the County of Yavapai, City of Prescott, Arizona. Plaintiff worked for Defendant as a Customer Service Representative from September 2018 to September 2019. Plaintiff executed his Consent to Sue form, attached hereto as Exhibit B.

13.     Defendant is a Delaware corporation with its principal place of business in Arizona.

14.     Defendant operates customer service call center locations in Arizona, California, District of Columbia, Missouri, and Pennsylvania.

15.     Defendant is a managed healthcare company that provides customer service to health plans and healthcare providers.

16.     Defendant may accept service via its registered agent Corporation Service Company, 8825 N 23rd Avenue, Suite 100, Phoenix, Arizona 85021.

\\

\\

\\

3

1

**GENERAL ALLEGATIONS**

2      17.    Defendant employed Plaintiff as an hourly call center Customer Service

3  Representative ("CSR"). Defendant assigns CSRs, like Plaintiff, to answer customer calls

4  from Defendant's clients.

5      18.    Plaintiff's primary job duties included answering calls from Defendant's

6  clients, which included healthcare providers and patients, regarding insurance pre-

7  authorizations for medications, tests, or health services.

8      19.    Throughout Plaintiff's employment with Defendant, Plaintiff regularly

9  worked at least 40 hours per workweek.

10     20.    Regardless of whether Defendant scheduled Plaintiff to work a workweek

11  totaling under 40 hours, scheduled to work a workweek totaling 40 hours, or scheduled to

12  work a workweek totaling in excess of 40 hours, Plaintiff regularly worked a substantial

13  amount of time off-the-clock as part of his job duties as a CSR. Defendant never

14  compensated Plaintiff for this time worked off-the-clock.

15     21.    29 C.F.R. § 553.221 provides:

16          Compensable hours of work generally include all of the time during which
an employee is on duty on the employer's premises or at a prescribed
17         workplace, as well as all other time during which the employee is suffered or
permitted to work for the employer. Such time includes all pre-shift and post-
18         shift activities which are an integral part of the employee's principal activity
or which are closely related to the performance of the principal activity, such
19         as attending roll call, writing up and completing tickets or reports, and
washing and re-racking fire hoses.
20

21     22.    29 C.F.R. § 790.8 states "[a]mong activities included as an integral part of a

22  principal activity are those closely related activities which are indispensable to its

23  performance."

24     ***A.***     ***Off-the-Clock Boot-Up Work.***

25     23.    Defendant tasked Plaintiff with providing customer service to Defendant's

26  clients by use of Defendant's telephones, Defendant's computers, and the programs

27  accessible from Defendant's computers.

28

4

24.     To access Defendant's systems, Plaintiff, and all other current and/or former CSRs, must boot up their computers and log in to the various computer programs, servers, and applications, and log in to Defendant's phone systems in order to take their first call at their scheduled shift start time. This boot-up process regularly takes 15 minutes per shift, or more if technical issues arise. Defendant did not compensate Plaintiff for this time.

25.     Regardless of how long the boot-up and login process takes, Defendant did not allow Plaintiff, and all other current and/or former CSRs, to clock in until after they completed the boot-up and login process.

26.     The boot-up procedure Plaintiff, and all other current and/or former CSRs, must complete before they begin being compensated is the same regardless of which call center location they worked at. The boot-up and login procedure is integral and indispensable to the performance of Plaintiff's principal job duties and integral and indispensable to Defendant's business.

27.     Thus, the unpaid, off-the-clock work performed by Plaintiff, and all other current and/or former CSRs, directly benefits Defendant.

### B.  Off-the-Clock Boot-Down Work.

28.     Defendant required Plaintiff, and all other current and/or former hourly CSRs, to first clock out of the timekeeping system, then spend time logging out of the necessary programs, servers, and applications, and restarting their computer off-the-clock. This boot-down process regularly takes 10 minutes per shift.

29.     This off-the-clock boot-down work performed by Plaintiff, and all other current and/or former hourly CSRs, was integral and indispensable to the primary job duties of Defendant's CSRs and directly benefited Defendant.

### C.  Defendant's Policy and Practice of Off-the-Clock Work Violates Federal and State Laws.

30.     At all times relevant, Defendant suffered or permitted Plaintiff, and all other current and/or former CSRs, to routinely perform off-the-clock work by not compensating its employees for the boot-up and login procedure and the boot-down and logout procedure.

5

31.     Defendant knew or should have known that it must pay its employees for all compensable time throughout the workweek. *See* 29 C.F.R. §§ 553.221, 790.8, 785.19(a).

32.     Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former CSRs, for their off-the-clock, compensable work performed in any amount.

33.     Defendant knew, or should have known, that the FLSA, 29 U.S.C. § 207, requires Defendant to compensate non-exempt employees who work in excess of 40 hours in a workweek at a rate of one and one-half times their regular rate of pay—including the compensable, off-the-clock work performed.

34.     Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former CSRs, for their off-the-clock, compensable work performed in excess of 40 hours in a workweek at one and one-half times their regular rates of pay.

35.     Defendant knew or should have known that Arizona wage and hour laws require an employer to pay employees wages for each hour worked. *See* A.R.S. § 23-351.

36.     Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former hourly CSRs working in Defendant's call center locations in Arizona for their off-the-clock, compensable work performed in workweeks totaling less than 40 hours and in workweeks totaling in excess of 40 hours at the proper legal rates, including overtime premiums.

37.     Defendant knew or should have known that Arizona wage and hour laws require an employer to promptly pay employees for their earned wages. *See* A.R.S. §§ 23-351 and 23-353.

38.     In reckless disregard of the FLSA and Arizona wage and hour laws, Defendant adopted and then adhered to its policy, plan, or practice of employing Plaintiff, and all other current and/or former CRSs, to perform compensable work off-the-clock. This illegal policy, plan, or practice caused incorrect payments for all straight time and overtime performed by Plaintiff, and all other current and/or former CSRs, in violation of the FLSA and Arizona wage and hour laws.

\\

**D.** **Recordkeeping.**

39. The Arizona wage and hour laws require that "[e]mployers shall maintain payroll records showing the hours worked for each day worked, and the wages and earned paid sick time paid to all employees for a period of four years." *See* A.R.S. § 23-364.

40. Further, 29 C.F.R § 516.1 subjects "every employer subject to any provisions of the Fair Labor Standards Act" to maintain employee records.

41. Federal regulations mandate each employer to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and the total hours worked by each employee each workweek. *See* 29 C.F.R § 516.2.

42. Upon information and belief, Defendant failed to establish, maintain, and preserve accurate timesheet and payroll records for all hours worked by Plaintiff as required by the FLSA and Arizona wage and hour laws.

43. When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946) controls. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

44. The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id.*

## **COLLECTIVE ACTION ALLEGATIONS**

45.   Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b) individually and on behalf of:

> *All current and former Customer Service Representative employees, and/or other job titles performing the same or similar job duties, who worked for Magellan Health, Inc., at any time in the last three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary.

46.   Plaintiff does not bring this action on behalf of any executive, administrative, or professional employees exempt from coverage under the FLSA.

47.   *29 U.S.C. § 216(b) Conditional Certification "Similarly Situated" Standard:* With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the call center employees described are "similarly situated" to Plaintiff. The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policies, or plan (namely, Defendant's practices, policies, or plan of not paying their CSR employees for their compensable boot-up and boot-down work performed in excess of 40 hours per workweek at an overtime premium of at least one and one-half times their regular rates of pay); (c) their claims are based upon the same legal theories; and (d) the employment relationship between Defendant and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

48.   Upon information and belief, Plaintiff estimates the FLSA Collective, including both current and former call center employees over the relevant period, will include several hundred members who would benefit from the issuance of court-supervised notice of this action and the opportunity to join it. The precise number of the FLSA Collective members should be readily available from a review of Defendant's personnel, scheduling, time, and payroll records; and from input received from the FLSA Collective members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

49.     Plaintiff shares the same interests as the FLSA Collective members in that the outcome of this action will determine whether they are entitled to unpaid overtime compensation, interest, attorneys' fees and costs owed under the FLSA. Because the facts in this case are similar, if not altogether identical, and the factual assessment and legal standards lend themselves to a collective action.

**THE ARIZONA WAGE AND HOUR LAW CLASS ACTION ALLEGATIONS**

50.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a putative Class defined to include:

> *All current and former Customer Service Representative employees in Arizona, and/or other job titles performing the same or similar job duties, who worked for Magellan Health, Inc., at any time in the last one year.*

(hereinafter referred to as the "Arizona Class"). Plaintiff reserves the right to amend this definition as necessary.

51.     *Numerosity:* The members of the Arizona Class are so numerous that joinder of all members in the case would be impracticable, and the disposition of their claims as a Class will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendant's personnel and payroll records.

52.     *Commonality/Predominance:* There is a well-defined community of interest among Arizona Class members and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

a.      Whether Defendant violated A.R.S. §§ 23-350 et seq. by failing to pay current and former employees for all wages earned;

b.      The proper measure of damages sustained by the proposed Arizona Class; and

c.      Whether Defendant violated A.R.S. § 23-364 by failing to make, keep, and preserve true and accurate payroll records.

53.     *Typicality:* Plaintiff's claims are typical of those of the Arizona Class in that Plaintiff and all other members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise

9

from Defendant's same policies, practices, and course of conduct as all other Arizona members' claims and Plaintiff's legal theories are based on the same legal theories as all other Arizona Class members: whether all Arizona Class members were employed by Defendant on an hourly basis without receiving compensation for all wages earned.

54.   *Adequacy:* Plaintiff will fully and adequately protect the interests of the Arizona Class and Plaintiff retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Arizona Class.

55.   *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, inter alia, it is economically infeasible for Arizona Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the Arizona Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds, or thousands, of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative Arizona Class claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

56.   The case will be manageable as a class action. This class action can be efficiently and effectively managed by sending the same FLSA opt-in notice to all employees similarly situated and adding for the Arizona Class within that group a separate opt-out notice pertaining to their rights under the Arizona state law. Plaintiff and his counsel know of no unusual difficulties in the case and Defendant has payroll systems that will allow the class, wage, and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case,

1    class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*,

2    559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a

3    plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

4                **BREACH OF CONTRACT CLASS ACTION ALLEGATIONS[1]**

5         57.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a

6    putative Class defined to include:

7         *All current and former Customer Service Representative employees, and/or*
          *other job titles performing the same or similar job duties, who worked for*
8         *Magellan Health, Inc., at any time in the last six years.*

9    (hereinafter referred to as the "Nationwide Class"). Plaintiff reserves the right to amend

10   this definition as necessary.

11        58.    *Numerosity:* The members of the Nationwide Class are so numerous that

12   joinder of all members in the case would be impracticable, and the disposition of their

13   claims as a Class will benefit the parties and the Court. The precise number of Class

14   members should be readily available from a review of Defendant's personnel and payroll

15   records.

16        59.    *Commonality/Predominance:* There is a well-defined community of interest

17   among Nationwide Class members and common questions of both law and fact

18   predominate in the action over any questions affecting individual members. These common

19   legal and factual questions include, but are not limited to, the following:

20        a.     Whether Defendant offered to pay Plaintiff and the Nationwide Class
21               certain rates (depending on the technical job titles) per hour for each
                 hour worked as call center employees;

22        b.     Whether Plaintiff and the Nationwide Class accepted Defendant's
23               offer by performing the essential functions of the job;

24        c.     Whether Defendant breached the contract by failing to pay Plaintiff
                 and the Nationwide Class for each and every hour worked; and

25        d.     Whether Plaintiff and the Nationwide Class were damaged.

26

27   _____

     [1] To the extent the Court finds, or Defendant argues, the employment relationship between itself
28   and its CSRs did not form a contract, Plaintiff reserves the right to seek Rule 23 class certification
     under Plaintiff's and the Nationwide Class' quasi-contract claims (Count IV).

11

60.     *Typicality:* Plaintiff's claims are typical of those of the Nationwide Class in that Plaintiff and all other members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from Defendant's same policies, practices, and course of conduct as all other Nationwide Class members' claims and Plaintiff's legal theories are based on the same legal theories as all other Nationwide Class members: whether Defendant and the Nationwide Class members were employed under an implied contract to be paid for each and every hour worked by Defendant.

61.     *Adequacy:* Plaintiff will fully and adequately protect the interests of the Nationwide Class and Plaintiff retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Nationwide Class.

62.     *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, inter alia, it is economically infeasible for Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the Nationwide Class members' claims, even if each Nationwide Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of thousands of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative Nationwide Class' claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

63.     The case will be manageable as a class action. This class action can be efficiently and effectively managed by sending the same FLSA opt-in notice to all

1   employees similarly situated and adding for the Nationwide Class within that group a

2   separate opt-out notice pertaining to their rights under the common law. Plaintiff and his

3   counsel know of no unusual difficulties in the case and Defendant has payroll systems that

4   will allow the class, wage, and damages issues in the case to be resolved with relative ease.

5   Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case,

6   class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*,

7   559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a

8   plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

9                                **COUNT I**

10
11          **VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
            **U.S.C. § 201, et seq., FAILURE TO PAY OVERTIME WAGES**
                         **(FLSA Collective Class)**

12          64.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

13          65.     At all times relevant to this action, Defendant was an "employer" under the

14   FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq.*

15
16          66.     Defendant is engaged in interstate commerce or in the production of goods

     for commerce, as defined by the FLSA.

17
18          67.     At all times relevant to this action, Plaintiff was an "employee" of Defendant

19   within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

20          68.     Plaintiff either (1) engaged in commerce; or (2) engaged in the production of

21   goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the

     production of goods for commerce.

22
23          69.     The position of Customer Service Representative is not exempt from the

     FLSA.

24
25          70.     Defendant's other job titles performing similar customer service

     representative job duties are not exempt from the FLSA.

26
27          71.     At all times relevant to this action, Defendant "suffered or permitted"

     Plaintiff to work and thus "employed" him within the meaning of the FLSA, 29 U.S.C. §

28   203(g).

                                      13

72.     The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of 40 hours per workweek. *See* 29 U.S.C. § 207.

73.     Defendant violated the FLSA by failing to pay Plaintiff the federally mandated overtime premium for all hours worked in excess of 40 hours per workweek.

74.     Upon information and belief, Defendant has corporate policies of evading overtime pay for its hourly workers.

75.     Defendant's violations of the FLSA were knowing and willful.

76.     By failing to compensate its hourly workers at a rate not less than one and one-half times their regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant violated the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a). All similarly situated CSRs, or other job titles performing the same or similar job duties, are victims of a uniform and company-wide enterprise which operates to compensate employees at a rate less than the federally mandated overtime wage rate. This uniform policy, in violation of the FLSA, has been, and continues to be, applied to CSRs, or other job titles performing the same or similar job duties, who have worked or are working for Defendant in the same or similar position as Plaintiff.

77.     None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the Class.

78.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## COUNT II

### VIOLATIONS OF THE ARIZONA WAGE ACT
**(Arizona Class)**

79.     Plaintiff, individually and on behalf of the proposed Arizona Class, re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

80.    Plaintiff and members of the Arizona Class are current and former employees of Defendant within the meaning of A.R.S. § 23-350(2).

81.    Defendant at all relevant times was an employer within the meaning of A.R.S. § 23-350(3).

82.    Defendant was required to pay Plaintiff and the Arizona Class for all hours worked.

83.    A.R.S. § 23-351 requires every employer to pay "all wages due" every pay period, including overtime pay.

84.    A.R.S. § 23-353 provides that when an employer discharges an employee or employee quits, the employer must pay the employee all wages due in a timely manner.

85.    Wages are defined as "nondiscretionary compensation due an employee in return for labor or services rendered by an employee for which the employee has a reasonable expectation to be paid whether determined by a time, task, piece, commission or other method of calculation." A.R.S. § 23-350(7).

86.    Defendant, pursuant to its policies and illegal timekeeping practices, refused and failed to pay Plaintiff and the Arizona Class for all hours worked.

87.    By failing to properly compensate Plaintiff and the Arizona Class for all "labor or services rendered" for which Plaintiff and members of the Arizona Class had a reasonable expectation of being paid, Defendant violated, and continues to violate its CSRs' statutory rights under A.R.S. §§ 23-351 and 23-353.

88.    Defendant's actions were willful, unreasonable, and done in bad faith. *See* A.R.S. §§ 23-352(3), 23-355.

89.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and the proposed Arizona Class have suffered damages in an amount to be determined at trial.

90.    Plaintiff and the proposed Arizona Class seek damages in the amount of their unpaid straight-time and overtime wages for all hours worked, treble damages, reasonable

15

1    attorneys' fees and costs for this action, pre- and post- judgment interest, and such other

2    legal and equitable relief as the Court deems proper.

3                                     **<u>COUNT III</u>**

4                                **BREACH OF CONTRACT**

5                        **(National Breach of Contract Class Action)**

6        91.    Plaintiff and the Nationwide Class re-allege and incorporate all previous

7    paragraphs herein and further allege as follows.

8        92.    Plaintiff and the Nationwide Class were hired at various times. Defendant

9    offered to pay Plaintiff and the Nationwide Class certain rates per hour for each hour

10   worked as a CSR. Each Nationwide Class members' contractual hourly rate is identified in

11   paystubs and other records that Defendant prepares as part of its regular business activities.

12       93.    Plaintiff and the Nationwide Class accepted the offer and worked for

13   Defendant as CSR, and/or other job titles performing the same or similar job duties.

14       94.    Plaintiff and the Nationwide Class also accepted the offer by their

15   performance—i.e., reporting for work and completing the tasks assigned to them.

16       95.    Plaintiff's work, and the work of the Nationwide Class, required boot-up and

17   boot-down time.

18       96.    Plaintiff and every other Nationwide Class member performed under their

19   contract by doing their jobs in addition to carrying out the off-the-clock duties Defendant

20   required.

21       97.    Upon information and belief, Defendant does not compensate its CSRs,

22   and/or other job titles performing the same or similar job duties, until after the boot-up and

23   login procedures are complete.

24       98.    Upon information and belief, Defendant stops compensating its CSRs, and/or

25   other job titles performing the same or similar job duties, before the boot-down and logout

26   procedures are complete.

27

28

99.   Despite being required to complete these integral job duties, Plaintiff and the Nationwide Class were not compensated at their hourly rate for their work performed.

100.   By failing to pay Plaintiff and the Nationwide Class for the boot-up and boot-down time Defendant breached its contract with Plaintiff and the Nationwide Class to pay their hourly rate for each hour worked.

101.   Defendant also breached its duty to keep accurate records to keep track of the time Plaintiff and other Nationwide Class members spent doing boot-up and boot-down activities, which is a fundamental part of an employer's job.

102.   In sum, the facts set forth above establish the following elements and terms of the contract:

    a.   Offer: a set hourly rate for each hour worked as a CSR;

    b.   Acceptance: Plaintiff and the Nationwide Class accepted the offer overtly or via performance (i.e., each showed up to work and completed the tasks assigned to them by Defendant);

    c.   Breach: Defendant did not pay Plaintiff and the Nationwide Class for each hour (or part thereof) worked; and

    d.   Damages: By failing to pay Plaintiff and the Nationwide Class their hourly rate for each hour worked, Plaintiff and the Class were damaged in an amount to be determined at trial.

103.   These claims are appropriate for nationwide class certification under Rules 23(b)(3) and/or (c)(4) because the law of contracts is substantially similar throughout the United States.

104.   As a direct and proximate cause of Defendant's breach, Plaintiff and the Nationwide Class were damaged in an amount to be proven at trial.

## COUNT IV

### QUASI-CONTRACTUAL REMEDIES: UNJUST ENRICHMENT
### (National Unjust Enrichment Class)

105.   Plaintiff and the Nationwide Class re-allege and incorporate all previous paragraphs herein and further allege as follows.

106.   Upon information and belief, Plaintiff's and every other Nationwide Class members' boot-up and boot-down time—which is integral and indispensable to their

1    principal activities as a CSR—provided valuable work and income for Defendant; namely,

2    compensation to Defendant for completing customer service activities that directly

3    benefited Defendant.

4        107.   Boot-up Time: Plaintiff and the Nationwide Class were unable to perform

5    any job function without booting up and logging in to their computers and required

6    programs. In short, in order to start their work of fielding customer calls precisely at their

7    designated start time, Plaintiff and the Nationwide Class worked off-the-clock before their

8    shift began. Without the boot-up time, Plaintiff and the Nationwide Class were unable to

9    take customer calls at their designated start time. Further, upon information and belief,

10   Defendant does not compensate its CSRs until after the boot-up procedures are complete.

11       108.   Boot-down Time: Plaintiff and the Nationwide Class could not leave the call

12   center until they logged out of all programs and restarted their computers after they

13   clocked-out. Without the boot-down time, Plaintiff and the Nationwide class were unable

14   to prepare for their next shift. Upon information and belief, Defendant does not compensate

15   its CSRs for the boot-down procedure.

16       109.   As part of their ongoing employment relationships with Defendant, Plaintiff

17   and other Nationwide Class members expected to be paid wages for the time they spent

18   doing their jobs, including performance of the necessary boot-up and boot-down

19   procedures performed each shift.

20       110.   By not paying Plaintiff and other Nationwide Class members for the time

21   they spent performing necessary boot-up and boot-down activities, Defendant was, and

22   continues to be, unjustly enriched at the expense of Plaintiff and the Nationwide Class in

23   an amount to be determined at trial.

24       111.   By not paying Plaintiff and other Nationwide Class members for the time

25   they spent performing necessary activities, Defendant also saved, and continues to save,

26   itself hundreds-of-thousands of dollars in unpaid payroll taxes—taxes that would have

27   otherwise been credited to Plaintiff's and Nationwide Class members' benefit.

28

112.    It would be unjust and inequitable to allow Defendant to retain the benefit of the work performed by Plaintiff and the Nationwide Class without compensation.

113.    These claims are appropriate for nationwide class certification under Rules 23(b)(3) and/or (c)(4) because the law of unjust enrichment is substantially similar throughout the United States.

114.    As a direct and proximate cause of Defendant's unjust enrichment, Plaintiff and the Nationwide Class were harmed at an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

a.    An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b.    An Order certifying the Arizona state law class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

c.    An Order certifying this action as a class action (for the Rule 23 Breach of Contract Nationwide Class or for the Rule 23 Unjust Enrichment Nationwide Class if no contract is found) pursuant to Rule 23 of the Federal Rules of Civil Procedure;

d.    An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential class members of their rights under this litigation;

e.    An Order designating Plaintiff to act as the Class Representatives on behalf of all individuals in the Arizona Class;

f.    An Order designating the Named-Plaintiff to act as the Nationwide Class Representative on behalf of all similarly situated individuals for both the FLSA and the Rule 23 Breach of Contract or Unjust Enrichment Nationwide Classes;

g.    An Order declaring that Defendant willfully violated the FLSA and its attendant regulations as set forth above;

h.    An Order declaring that Defendant violated its obligations under the FLSA;

i.    An Order declaring that Defendant willfully violated Arizona Wage and Hour Law and its attendant regulations as set forth above;

j.    An Order granting judgment in favor of Plaintiff and against Defendant and awarding the amount of unpaid minimum wages, and overtime pay calculated at the rate of one and one-half (1.5) of Plaintiff's regular rate multiplied by all hours that Plaintiff worked in excess of 40 hours per week;

k.    An Order awarding liquidated damages to Plaintiff, in an amount equal to the amount of unpaid wages found owing to Plaintiff under the FLSA, in addition to all penalties and damages owed under the Arizona Wage Act and its attendant regulations as set forth above;

l.    An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action;

m.    An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

n.    An Order awarding such further relief as this court deems appropriate.

## JURY DEMAND

NOW COMES Plaintiff, by and through his undersigned attorneys, and hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: January 12, 2022.

Respectfully Submitted,

By: */s/ Richard P. Traulsen*
Richard P. Traulsen (AZ Bar No. 016050)
**BEGAM MARKS & TRAULSEN, P.A.**
11201 North Tatum Blvd., Suite 110
Phoenix, Arizona 85028-6037
T: 602-254-6071
E: rtraulsen@BMT-law.com
*Local Counsel for Plaintiff*

Jacob R. Rusch (MN Bar No. 0391892)*
Zackary S. Kaylor (MN Bar No. 0400854)*
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Saint Paul, MN 55101
T: 612-436-1800
F: 612-436-1801
E: jrusch@johnsonbecker.com
E: zkaylor@johnsonbecker.com

*Lead Attorneys for Plaintiff*